decease, A. Stephen Young, plaintiff's account, B. Anita Suzanne Wiley, and Alexander Steward Young III, defendants' accounts. Arguing on behalf of the accounts, Mr. Philip J. Piscopo. Arguing on behalf of the attorneys, Mr. Kevin Pat Nelson.  Thank you, Mr. Chairman. You may proceed. May it please the court and counsel. Your Honor, the first thing I'd like to address is what was mentioned in your oral argument notice about the case of Ingray Estate. It looks French, but I'm not sure. It's the estate of Roe. I'll just call it Roe. 113 in Illinois, I'll call it 356. I'll have to confess that when I was doing my research and I looked for a thesis on this very subject, that somehow never popped up. Did you do a French search? I did do a French search. It was only the common law of Illinois. So I apologize for that, but since Your Honor has found it, it's a good case to address. And if Your Honor's agree with this holding, then I believe it's dispositive. Just to run down what happened, it was originally filed. It was a will contest filed in the federal district court for the Northern District of Illinois in the diversity jurisdiction. But then the district court dismissed it for lack of federal jurisdiction due to the jurisdictional amount. And then it was refiled within one year, but long after that nine-month period for filing the will challenges. It was refiled under the predecessor 13-217, and the trial court dismissed the refiling, finding consistent with the arguments that I made and that Mr. Nelson made, that this is a jurisdictional issue and so therefore you don't have that refiling. And the appellate court reversed it and said, yes, we acknowledge that this is a jurisdictional issue. However, the original filing satisfied the jurisdictional requirement, and there are no exceptions in Section 24 of the Limitations Act to will challenges. And so therefore, we the court reversed the trial court because 13-217, the current version, does in fact apply to will contests as well. So this court, that was decided by the first district, which is not binding on this court, but this court could choose to file it, and I believe it should. And if it doesn't, it's positive because our client retains the right to refile his will contest within one year after the denial of motion to vacate under SC 1-4. That means that both the DWP and the denial of motion to vacate are not final letters. And so therefore, this court has no need to review it. So then the question is, was Braille correctly decided? And I believe it was. Is your take the idea that if you file the motion to vacate on the 364th day and it's denied, you now have another 365 days to file the new proceeding? Well, under the case law, yeah, that would be the case. Obviously, that's not what happened here. We filed it within 30 days. But there are cases, and I can't remember them off the top of my head, but there are cases that say that you can file a motion to vacate any time after the DWP is in it. You don't have to do it within 30 days, precisely because the DWP is not a fine order. And in addition, there are other cases that hold that the time, the one-year period for refiling starts when the motion to vacate is denied. It doesn't start at the time of the original DWP. So to answer your question, yeah. So that means that the DWP statute or rule relates to at least two years of limitation. It does. Because supposedly if you file a motion to vacate and it's denied, you now have another full year to file suit. Yes. Or you can file another motion to vacate, right? Because if it's not a fine order for another year, what's to keep you from filing another denial or motion that's denied and extends it another year and another year and another year? I don't think I'd say yes to that one. I don't think I'd say yes to that one either. But that's not unique. That's water over the dam or water under the bridge. It's not applicable here because we filed it within 30 days. Exactly. It's irrelevant. Right. So to return to the question of whether GRAIL was correctly decided, it hasn't been cited very many times since 1969, but it was cited in an interesting case called People v. Refugees. Did you file or refile everything that you non-suited or DWPed or was DWPed before? Pardon? You filed a complaint within 30 days, is that correct? We filed a complaint. A will contest or a complaint? There has not been a new one filed as of standard today, Mr. Trush. I thought you said that within 30 days of the denial you actually refiled a suit. No. Well, what happened was there are two cases here. One was the will contest and one was a separate six-count complaint. The trial court DWPed both of them on January 16th, 2019. We filed a motion to vacate both of those DWPs. With respect to the six-count complaint, we filed a new action. We refiled the six-count complaint. Right, but didn't do it with the will contest. We did not do that with the will contest. We did it with the six-count complaint, which is now the subject of a separate appeal before this court. But the record was just filed yesterday on it because the trial court again dismissed it saying that it was filed too early, which we believe is wrong. So we'll be back here on another one in the future once the briefing is done on that. Okay. Well, you answered my question, which was that there were two proceedings. One you filed and one you didn't. That's correct. That's correct. But we're still within the one-year time, so we could refile the will challenge again. If we choose to do that, I believe we will under the Braille case. I do believe it was correctly decided, and the case I've referred to is People v. Rodriguez, 339-111-1236-77, where this court affirmed the dismissal of a refiled statutory summary suspension petition. I know that's a lot of words. Because it was filed after 90 days. The person filed it timely, voluntarily dismissed it, and then refiled it within one year under Section 13-217. The trial court dismissed it saying that it had to be filed within 90 days. This court affirmed. Justice O'Malley filed the dissent, and he cited the Braille case to support the notion that the right to refile is very broad, it's not limited by the statute, it's not limited by the statute on statutory summary suspensions, and so therefore Justice O'Malley respectfully believed that this court was wrong in dismissing it, and then the Illinois Supreme Court in People v. McClure agreed with Justice O'Malley and overruled Rodriguez, relying on the same principles, although I note that the Supreme Court did not cite Braille or Justice O'Malley's dissent, but it agreed with every portion of his reasoning. And in another case, Pair v. Metz, Train and Younger, 274 Illinois Appellate 3218, applied Braille to a refiled action against a dissolved corporation, even though the second filing was after the statutory period after a corporation was dissolved. I would note that, just as the Braille case noted, there's nothing in the Will Challenge statute precluding the application of 13-217, and so in the case of Aranda v. Homer Manufacturing from 1977, the Supreme Court confirmed that the statutes were read broadly, not narrowly, and so I think under all those things I would respectfully submit that my submission that this court had jurisdiction because there's no right to refile it. I'll concede that we're wrong. Do we take that as a motion to dismiss the appeal? Well, it's up to the court to decide its jurisdiction. So if the court disagrees with that, then it would not be a motion to dismiss. The court has an independent duty. Do you want to address the merits of the appeal? I do, Judge, Your Honor. The standard of review is abuse of discretion, but in researching the question, it seems that that abuse of discretion standard has some bite to it, a lot more than other cases of abuse of discretion, and the case of Ingray Marriage of Dade really sets that forth because it says a DWP is error unless a party has been guilty of inexcusable delay, and I found it interesting that it puts it is error at the beginning of the sentence, the beginning of the analysis rather than at the end. Usually when you think of abuse of discretion, it says that if there's anything supporting the judge's decision, it should be affirmed, but Dade did the opposite. It practically presumes that it's error unless the party has been guilty of inexcusable delay. Was this written by Yoda by any chance? Written by me? Yoda. Possibly. Possibly written by Yoda. But Yoda means something when he puts things in the front, and I think that the Dade court did as well, especially since there are plenty of other cases that have reversed DWPs, like Yacht v. Yacht and O'Day v. Frog, Department of Revenue v. Countryman, which was decided by this case. The Attorney General failed to appear on status calls. The trial court DWP refused to vacate it, and the appellate court reversed, saying just because you missed a status call doesn't mean you're not acting with due diligence. How long did this case go on before the DWP was entered? The real contest was filed in August of 2015, and the DWP was entered in January of 2019. So are you asking us to say that the plaintiff is, as I recall the record, the plaintiff wanted to speak by phone or appear by phone, and that wasn't allowed, and then he asked several times to get an attorney. But this case, he didn't appear, did he? Well, he did appear by court call on at least one occasion. I believe it was more than one occasion, but I'm not going to posit that. And then on the day when the DWP was actually entered, wasn't it one of your colleagues showed up and said, Judge, I'm filing an appearance, but I need time to review the file? Yes, that's what happened. And this is four years later, four years after this has started. It is four years, but there's more to it than just four years. None of the cases on DWPs have said, well, it was four years old, therefore it has to be dismissed. And in fact, the idea that our client is responsible for all those four years of delays is just wrong. Did he ever comply with discovery requests? Yes, there's no indication that he didn't. I thought there were several motions, maybe not for sanctions, but to have dates set, and then there were motions that he filed to continue those dates. There was a motion to compel that our client filed against Ms. Wiley to compel discovery, and then that discovery was then complied with after the motion to compel was filed. And then our client's brother, Stuart, who was at the time represented by Ms. Truman-Alley, but is not now. We do not represent Stuart and never have. Stuart Young had a separate claim against him brought by the estate, and he was often accused of not complying with discovery. But that's Stuart. That's not Stephen. And there's nothing that ever, nothing in the record ever suggested that Stephen was ever deficient in complying with discovery. And there's nothing in the record that says that he ever failed to comply with any orders of the court. There was only one time that he was ordered to appear, either personally or by counsel, and that was in August of 2016, and he did that. All right. On January 16th of 2019, your client thought it, the case, your client didn't think the case was set for trial. He thought it was set for something else? A motion to compel discovery? There was a motion to compel discovery. But it wasn't his. It was the, it was Suzanne's. It was Suzanne's motion to compel against Stuart, not against Stephen. All right. So, and the will contest certainly was not set for trial. There's nothing in the previous order that said the will contest was for trial. It only said the six-count complaint for trial. There, well, on November 28th of 2018, which was a status hearing. Yes. Did, all right, did that order give plaintiff 28 days to respond to Suzanne's motion to compel? Or are you saying that was Stuart who had 28 days to? That was Stuart who had 28 days, because there was no motion to compel filed against Stephen. And then setting the complaint for hearing on January 16th. What's the complaint? Well, it said the hearing on the plaintiff's five-count complaint against Stuart and Suzanne. All right. So that was set for the 19th? That was set for 116.19 at 930 a.m. For hearing on the plaintiff's five-count complaint. But when everybody showed up, whoever showed up, Mr. Storm wasn't ready to proceed. He was not. No, that's true. He was not. He had just been retained to meet earlier. So who caused that delay? Who caused that delay? Just four years after the complaint is filed, there is an attorney of record. Well, there was an attorney prior to that, too. But he left. He left, yes. And then there was a period of time where there wasn't. So, I mean, was it, let's put it this way, all right, was it your client's responsibility to get things done in a timely fashion? Well, arguably it's everybody's responsibility to get something done. But he's the plaintiff. He is the plaintiff, yes. All right. And he chose to represent himself initially, then with counsel, then without counsel, and then two days before a hearing is set on the complaint, the five-count, six-count complaint, an attorney shows up. Well, that's not all that happened. There was more that happened in between. Mr. Canale withdrew early in November of 2018. And then Stephen was given 21 days to find new counsel. I mean, it was one of those two. And it was set for status on the 28th of November. And he was attempting to file a motion to extend, but he was stymied because of the defiling rules, which he was unfamiliar with. And I understand that pro ses are required to have, are required to follow rules like everybody else. Or they can ask permission. Or they can ask permission. But he wasn't. But the issue on a DWP is whether he was attempting to move his case forward and whether he was making an attempt to prosecute. And the cases say that an erroneous attempt to prosecute is not a failure to prosecute. And then on the 9th, he did file a properly filed, e-filed motion to continue. He filed that on the 9th of January. So he was, the record shows that he was attempting to move his case forward. And so for those reasons and the reasons stated in my brief, we would ask that if this court finds that it needs to be reviewed, that the trial court's decision to DWP and not to vacate it be reversed. Thank you. You will have a chance to make rebuttal. Yes, thank you. Mr. Nelson, you may proceed. Thank you, Your Honor. May it please the Court. Do you have a different take on the rule than Mr. Piscopo? I do. From pronunciation. I am definitely not French. I grew up here, so I call it Braille. I apologize for calling it that. If you'd like me to address Braille first, but I was actually going to offer a point of clarification. It was just discussed by Ms. Hutchinson concerning the November 28th order itself. And to be clear, it's in the record. You can keep the order. There were multiple things set for hearing, which actually applied to the appellate statement, the first of which was the hearing on the actual complaint or trial. The other matter was a motion to dismiss by the other appellee, Stuart Young, who was also our client, which was seeking to dismiss him from the case entirely as a defendant. So that was also set for hearing on January, and it applied to Mr. Young, who did not appear on that day. Now, the motion to compel was concerning his brother, the other plaintiff, but there was more than one matter set for hearing in January. But in November, he was ordered to appear, correct? Yes. In fact, at the beginning of November, when his prior counsel, Mr. Canale, withdrew, he was ordered, you know, must appear, file an appearance, and appear either individually or by counsel on November 28th, which did not happen. And the court in that instance, Judge Novogruen, in sua sponte, gave him time to respond to the motion to dismiss and said that he would appear. Correct. As to Braille, Your Honor, I find myself in a unique position. I'm arguing against the appellant's position in this case, and I also will confess that Braille did not come to our attention. But what I would argue in this court is Braille, first of all, is not binding. It is a first district court decision interpreting Supreme Court cases. They interpreted it wrong. And I think actually subsequent decisions by this court in looking at the cases that they were interpreting lend credence to that fact. And I think it's actually time for a split in the districts as well, too, on this. Respectfully, Braille gets the case that it's interpreting, which is this Ruffing case, Ruffing v. Gieseldorf. It gets it wrong. And it, in essence, rewrites what Section 13217 actually says. So the question is, how is Braille wrong? Well, as my colleague went through the history of Braille, he accurately recited it, but in essence what Braille stands for is Section 13217 applies to a timely brought will contest. So if you bring your will contest within that six-month period and the case is DWP, in that instance 13217 applies. That's the holding it is most basic. But the problem is the first district in that case actually, I would argue, misapplies and construes Ruffing, the case that it is determining, too narrowly. So looking back to Ruffing itself, Ruffing was a case where it was DWP, and Ruffing stands for the proposition that this section we're talking about, the probate act, the time limitations, 8-1, is jurisdictional in nature. It says that unequivocally. What does that mean? Now the problem with 13217 is it does have a statute of limitations in there, but it's something more, and it has been clearly established that it's jurisdictional. What year was Ruffing written? Ruffing was actually discussed in Braille, I believe it was the same year, or just before it was brought to, and I can hold the specifics on that. It was issued in 1968, and Braille was in 1967. And the Ruffing case, in essence, makes it very clear. Section 8-1 of the probate act is jurisdictional. What does that mean? Well, Ruffing actually, if you read the Ruffing opinion, was interpreting another Supreme Court case, the Luther case, Luther v. Luther. And in this case, the Supreme Court went into extreme detail on what they were getting at. And what that was was 13217, or excuse me, Section 8-1 is jurisdictional, and it is not necessarily a statute of limitations. It has a statute of limitations in there, but it is jurisdictional by nature. And in that Luther case, they really get into this analysis, and the reason is it's the public policy behind 8-1 in general. And the idea is we can't have, with a probate estate and a will contest, rights are created, potential rights in probate property. We can't have a cloud hanging over that indefinitely. So we are going to set a time period, a strict time period, for which claims can be brought. And that's it. And they actually even go into the fact that they understand that the Constitution, thus the district courts, with very broad, essentially they can hear anything. But the public policy of the will contest and the fact that there are these rights that need to be adjudicated and we want to dispose of the states is more pressing, so it is jurisdictional in nature. Counsel, there have been about five or six cases within the last 10, 15 years relating to what the Supreme Court presently thinks on jurisdiction. And Toyota v. Belleville is probably the seminal case or the first case. And since then, they've also come out again and said that essentially the only place where it's jurisdictional is in administrative law. And all places elsewhere, if it's justiciable, it is voidable in that void. And so although I don't question your interpretation of what you've cited, it's outdated in my opinion because of the Toyota case and the cases that come after it. Toyota basically bifurcated the concept of jurisdiction and left certain areas of criminal law jurisdictional defects based upon unauthorized law. In Casselberry, I believe they decided that that was no longer the case, that like Toyota, there will no longer be a lack of jurisdiction based upon the subject matter so long as it's a cause of action recognized in the state of Illinois and it's a justiciable matter. So why don't you proceed to spend the rest of your time discussing the reputation or disagreement with his argument that this was an abuse of discretion? And respectfully to all those points as well, too, I don't believe any of those cases from Toyota or to what have you discusses the will contest. No, they don't. But they cover it. The language is broad enough that I would deem myself unreasonably recalcitrant if I didn't comply with what they said. We don't want a recalcitrant judge, that's for sure. Sometimes I'm peckish, too. But I would respectfully state as we stand here today as well, too, the Ruffing case and the Luther case are still good law, and those are the cases that are dealing with probate. As to the UCC, jurisdiction has been limited with that as well, too. So there is more than one area of law which is treated differently than most cases. But taking your direction on that and going to, okay, assuming that we're going to look at what Judge Noverini did here, the overarching standard review of everything that is brought regarding this will contest is abuse of discretion. Part of the problem, and it's elucidated in the brief, is there is nothing concerning the January hearing other than an order. There's no report on proceedings. There's no bystander report, what have you. And that order, if you look at it, says the court was fully advised and made the decision that it did. The presumption of it, with nothing further, is that that was correct. Consequently, any argument that's made in subsequent briefs, what have you, concerning what occurred on that January date is not acceptable. You cannot supplement the record after the fact of what happened on that date. Now, the subsequent motion to make it was filed, and that was fully briefed, and the judge's mission to argument made a decision on that. But the first thing concerning that January date that needs to be discussed is the denial of the motion to continue. Broad discretion is granted with the – is vested with the trial court in making that decision. Looking at the past order, it did say must appear, and it can be reasonably construed that Mr. Young needed to be there on that date to proceed on trial and concerning his – concerning the pending motion to dismiss. Even if he was now represented by counsel? Yes, correct. And the argument is, if you go back and look through the history of the orders as well, too, it's very clear Judge Novarini, when he says it's acceptable to have somebody appear via counsel. In fact, almost all of them say individually or by counsel, and it's bold, must appear, must appear, must appear. So if he meant just by counsel, that would be the case. Additionally, pursuant to local rule, what have you, he needs to be there on the date of proceeding on trial of his case as well. But he didn't think it was up for trial that day. That's correct, and that's his interpretation of it. But he also knew that it was up for hearing on a motion to dismiss as well, too, or he should have known because that's in the order. And the record is also definitive. While there isn't the proof of service, Mr. Young acknowledges that he received that November order and was aware of it. He just misunderstood what it meant. And that comes into, you know, pro se litigants present a problem for the trial court, certainly, but they're still held at the same standard as well, too. And I believe the order is fairly clear of what is happening on that January date. So you have the continuance. Then you have Mr. Piscopo's colleague, Mr. Storm, requested a general continuance just to review the file as well, too. That was denied. There was really no specifics of what happened there. And because in the order, if you look at it, it states that Ms. Wieland is there because she presented a subsequent motion as well, too, and the parties referring to the plaintiffs are not present in answering Reading. The case was DWP. And, in fact, this was not just the first time. It was a long series. And it can be construed as a, oh, here we go again, because going back to the earlier history of the case, there was a series of times when Mr. Young was not appearing. Despite explicit orders by the court, must appear, must appear, and warnings in those orders, the case can then be dismissed. Then it started back up. But only four years later did the warnings come to fruition. Correct. Maybe it should have, you know, if nothing happened the first couple times, why would he believe that it would happen on that January date? That's certainly fair. I would argue actually the opposite of that, though. He was on clear notice that his case could have been in jeopardy. He had been given warnings in the past as well, too. I would state, quite frankly, that Judge Noverini was overly gracious to this pro se litigant in giving him time and not following up on his threats. But the fact of the matter, in the record, there are multiple must appear, plaintiff is not present, must appear, plaintiff is not present. And then it started again in November. And then it culminated, and rightly we would argue ended, in January. So those were the main issues in January. And then subsequently a motion to vacate was timely filed. It was fully briefed, and then there was a hearing on that. And that was denied as well, too. And my esteemed colleague is correct. In fact, judging a motion to vacate on a DWP is reviewed for abuse of discretion. But it's kind of interesting how the standard is written that the case should be vacated unless those three elements that we discussed are present. And looking at the record itself, the court was well within its bounds to find that the justification given was not substantial or legitimate. It was well within its bounds to, may I conclude? Yes. It was well within its bounds to determine that there had been a consistent pattern of disregard of court order. And it was well within its bounds to conclude that there was prejudice because, as I believe it was stated in the beginning, the decedent, Mrs. Young, Mary Young, passed away now coming up on six years. So there's a cloud on probate title for a long period of time. And that's a prejudice to anyone interested that those rights are not resolved. Thank you. Thank you. Mr. Piscopo, you may proceed. There is really very quickly the roughing court, the Braille case distinguished that by saying that in roughing there had been no petition at all to invalidate the will. So therefore, there was no jurisdiction over it because it was not at all. Whereas in Braille, jurisdiction was invoked when the original timely petition was filed. So therefore, the predecessor to 13-217 kicked in. The only other thing to say about that is, with regard to the policy considerations that counsel brought up, that was recited in this court's decision in Rodriguez to disallow the 13-217 refiling, and the Supreme Court respectfully, of course, rejected that reasoning and found that, you know, the statute says what it says, despite any policy considerations that the Rodriguez court held. With regard to the merits, counsel recited all the things that were said to take place on them. In the November 28th order, that would take place on January 16th of 2019, and the will contest for trial was not among those. And so there was no indication that the will contest itself was ever set for trial, and it was not set for trial on the 16th of January. And so if the case, if the will contest had not been dismissed for one prosecution, there would have been no delays because that delay was anticipated, because that case was not going to be tried on that day. So there really was no prejudice that would result to Suzanne writing the will contest continually and not being dismissed for one prosecution. Thank you about that. Well, but it may not have been set, but how, you know, he was to appear, and he did not appear. So as I asked counsel, was the appearance of Mr. Storm his appearance as well, or was he still required to appear? Well, all the things that say plaintiff must appear were in relation to the five-count complaint, including the steward's motion to dismiss the five-count complaint as to him and the setting of the five-count complaint for hearing, whatever that was, which our client, as you noted, really misunderstood what that was about. It was not ordered to appear in relation to the will contest. It was only ordered to appear, if that, in relation to the five-count complaint. And the appearance was if it was set for hearing. So with regard to the will contest, he was not required to appear in that affirmatory order. It was only with respect to the five-count complaint, which happened to be pending at the same time. And is that why you haven't refiled the will contest yet? You're waiting for this disposition? I am waiting for this disposition. There's no reason to refile it if we can't. So if April 10th comes up and your honors haven't disposed of the case yet, we'll probably do that. What was the size of the estate? Well, that's a good question. According to the administrator, the estate had only about $15,000. However, there were extensive other assets that were transferred out of the estate prior to Ms. Young's death. And so, therefore, we believe that the estate had a piece of significantly more assets than what was represented in the report. Well, does that have to do with a will contest, or does that have to do with breaches of fiduciary duty or conversion or what? It has to do with both, because the will that's being challenged purports to provide all of Ms. Young's estate to Suzanne, and leaving her client out and leaving his brother out. So we really need to do both. We need to do the fiduciary duty and we need to do in order to bring the property back into the estate and also do the will contest in order to have the will in validity. That's the goal that our clients have been trying to do all along. And frankly, that's what justice required that the matter be decided on its merits. And this DWP is really on a technicality. There's no consistent pattern of defiance of the court's orders found anywhere in this record. It's just a few times the case got continued, sometimes at the request of the other side, plus a six-month period where the estate filed this motion to strike the will contest with the amazing claim that the clerk was somehow persuaded to backdate the will contest. And that alone caused a delay of six months in the resolution of the will contest. So the idea that our client is solely responsible for delays is simply untrue. Even after that, Ms. Weiland never answered the will contest for another six months after Judge Ackman reinstated the will contest. For all those reasons, if I may add just a clue, for all those reasons, the trial court's decision is an abuse of discretion. Let me ask you one question. How many times did your client appear in this case? You mean personally or by counsel? Personally. I know he appeared at least once by court call, possibly two or three other times by court call. Did he personally come up from Texas to appear? I don't believe he did. There's nothing in the record that says he did. And how many times was without counsel? How many times did no one appear in that case? I believe, well, November 28th of 2018, and I believe possibly a couple of times in the summer of 2016, two or three times, possibly. I would note that the ones that counsel pointed out, those were also with respect to the sixth counsel complaint and not with respect to the will contest. They were still separate. They were separate cases at that time. If there's one more case on the call, there will be a short recess. Thank you.